Hector **SANTIAGO SALGADO,**
Petitioner–Appellant,

v.

Rosie B. **GARCIA,** Warden,
Respondent–Appellee.

No. 02–55557.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 16, 2004.

Filed Sept. 13, 2004.

Verna J. Wefald, Pasadena, CA, for the petitioner-appellant.

Alan D. Tate, Deputy Attorney General, Los Angeles, CA, for the respondent-appellee.

Before FARRIS, KOZINSKI, and SILVERMAN, Circuit Judges.

FARRIS, Circuit Judge.

Petitioner questions the propriety of our procedures regarding certificates of appealability, namely whether a two-judge panel may properly deny a certificate of appealability. We conclude that our procedures are consistent with the authority granted to us by Congress and affirm the district court's judgment.

## I.

### BACKGROUND

The district court dismissed with prejudice Salgado's petition for a writ of habeas corpus. Salgado then filed a notice of appeal and request for certificate of ap-

pealability. The district court denied the COA request.

This court also denied Salgado's request for a COA, but subsequently granted reconsideration limited to the following issue: "whether a COA may be properly denied by a two-judge panel." *Salgado v. Garcia,* No. 02–55557 (9th Cir. July 21, 2003) (order granting partial COA).

## II.

## JURISDICTION AND STANDARD OF REVIEW

■ "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel,* 529 U.S. 473, 482, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). We review de novo questions of statutory interpretation. *See United States v. Cabaccang,* 332 F.3d 622, 624–25 (9th Cir.2003) (en banc). "In construing federal statutes, we presume that the ordinary meaning of the words chosen by Congress accurately express its legislative intent." *Brower v. Evans,* 257 F.3d 1058, 1065 (9th Cir.2001).[1]

## III.

## HISTORY

### A. Predecessor to the COA Statute: The Certificate of Probable Cause

Starting in 1908, a state prisoner seeking to appeal a federal trial court's denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254 was required to obtain a certificate of probable cause authorizing an appeal. *See* Act of March 10, 1908, ch. 76, 35 Stat. 40 (current version at 28 U.S.C. § 2253). Congress added the

CPC requirement because of delays in state capital cases caused by perceived "frivolous" appeals in federal habeas cases. *See Barefoot v. Estelle,* 463 U.S. 880, 892, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). However, at the time of the 1908 statute, federal circuit courts did not possess appellate jurisdiction over a district court's denial of a habeas petition and subsequent CPC. Instead, an appeal of the denial of habeas relief went directly to the Supreme Court. *See, e.g., Grammer v. Fenton,* 268 F. 943, 946–47 (8th Cir.1920).

In 1925, Congress expanded the federal circuit courts' jurisdiction to authorize appeals in habeas cases from a district court to a circuit court; the CPC statute was amended accordingly to provide that a circuit judge, like a district judge, could issue a CPC: "[N]o appeal to the circuit court of appeals shall be allowed unless the United States court by which the final decision was rendered or a *judge of the circuit court of appeals* shall be of opinion that there exists probable cause for an appeal...." *Schenk v. Plummer,* 113 F.2d 726, 727 (9th Cir.1940) (quoting 28 U.S.C. § 466 (1925)) (emphasis added).

In 1948, the CPC statute was recodified as 28 U.S.C. § 2253 and provided that no appeal could be taken from a final order in a habeas proceeding, "unless the justice or judge who rendered the order or a *circuit justice or judge* issue[d] a certificate of probable cause." *See Slack,* 529 U.S. at 480, 120 S.Ct. 1595 (quoting Act of June 25, 1948, 62 Stat. 967) (emphasis added).

The Supreme Court subsequently acknowledged the broad discretion granted by section 2253 to the courts of appeals: "It is for the Court of Appeals to deter-

---

1. The standards set out above reflect that the sole issue certified on appeal is one which concerns the procedures of this court and the statutory authority governing those proce-

dures; the merits of this case are not properly before us. *See* 9th Cir. Rule 22–1(d); *cf. Hiivala v. Wood,* 195 F.3d 1098, 1103 (9th Cir.1999).

mine whether such an application to the court is to be considered *by a panel of the Court of Appeals, by one of its judges, or in some other way* deemed appropriate by the Court of Appeals...." *In re Burwell,* 350 U.S. 521, 522, 76 S.Ct. 539, 100 L.Ed. 666 (1956) (per curiam) (emphasis added); *see also United States ex rel. Sullivan v. Heinze,* 250 F.2d 427 (9th Cir.1957) (post-*Burwell* decision denying CPC via one-judge order); *Burgess v. Warden,* 284 F.2d 486, 488 (4th Cir.1960) (post-*Burwell* decision holding CPC may be ruled upon by one or three judges depending on whether court is in session).

### B. Enactment of AEDPA: Certificates of Appealability

In 1996, as part of the Antiterrorism and Effective Death Penalty Act (AEDPA), Congress amended section 2253 and made sweeping changes in the federal habeas statutory scheme. Pub.L. No. 104–132, § 102, 110 Stat. 1214, 1217 (1996). Congress renamed the CPC a certificate of appealability and for the first time extended the COA requirement to federal prisoners who file post-conviction motions under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1)(B). Congress, however, left intact the provision authorizing a *"circuit justice or judge"* to issue the certificate of appealability. *See* 28 U.S.C. § 2253(c)(1) (emphasis added). The Federal Rules of Appellate Procedure continue to reflect this discretion by providing that a "[COA] request addressed to the court of appeals may be *considered* by a *circuit judge or judges, as the court prescribes.*" Fed. R.App. P. 22(b)(2) (emphasis added).

### IV. DISCUSSION

Salgado, without mentioning *Burwell* and its progeny, argues that COAs must be referred to three-judge panels because in *Hohn v. United States,* 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), the Supreme Court deemed a COA a "case" for purposes of exercising its statutory certiorari jurisdiction. Salgado points to the fact that 28 U.S.C. § 46(b) requires "case and controversies" to be determined by panels consisting of three judges. Salgado's argument is contrary to both Supreme Court precedent and basic rules of statutory construction.

### A. Hohn did not overrule Burwell and its progeny allowing for less than three judges to determine a COA

■ In *Hohn,* the Supreme Court overruled its earlier decision in *House v. Mayo,* 324 U.S. 42, 44, 65 S.Ct. 517, 89 L.Ed. 739 (1945) (per curiam), and held that it had the authority to invoke its statutory certiorari jurisdiction to review a COA denial. 524 U.S. at 241, 249–53, 118 S.Ct. 1969. In so holding, it rejected *House's* reasoning that such threshold determinations do not constitute "cases" that have been "in" the courts of appeals within the meaning of 28 U.S.C. § 347(a) (a predecessor to § 1254(1)) and further pointed to its own common-place practice of considering COA and CPC denials without any indication that it was doing so via common law writ as opposed to statutory certiorari. *See id.* at 250–52, 118 S.Ct. 1969 (explaining that its holding will allow the Court to "carry out [its] normal function of reviewing possible misapplications of law by the courts of appeals without having to resort to extraordinary remedies").[2]

2. In deeming the COA denial a "case" for purposes of certiorari review, the *Hohn* Court bolstered its analysis by pointing out that Hohn's COA application in the Eighth Circuit had moved through the court in the same manner as cases in general: The case was submitted to a full panel who issued a full opinion and subsequently entertained a peti-

Not only did *Hohn* leave the holdings of *Burwell* undisturbed, it cited *Burwell* in its discussion explaining the Circuit procedures for processing COAs, *see id.* at 245, 118 S.Ct. 1969, and once again acknowledged the broad discretion provided by the COA statute and derivative rules.[3] *Id.* at 244, 118 S.Ct. 1969 ("Rule 22(b) by no means prohibits application to an individual judge, *nor could it, given the language of the statute.*") (emphasis added). Thus, *Burwell* remains good law. *See id.* at 252–53, 118 S.Ct. 1969 ("Our decisions remain binding precedent until we see fit to reconsider them . . . .").

Nor are we persuaded by Salgado's suggestion that section 2253's provision authorizing a single judge to *grant* a COA should be construed to mean that a panel of three must *deny* it. First, *Burwell* provided the circuit courts with the discretion to "consider" CPC applications by fewer than three judges without regard to whether the request was granted or denied. *See Burwell,* 350 U.S. at 522, 76 S.Ct. 539. As noted earlier, the circuit courts subsequently applied *Burwell's* holding without Salgado's suggested limitation. Second, *Hohn's* holding itself appears to refute the distinction made by Salgado: "We hold this court has jurisdiction under § 1254(1) to review *denials* of applications for certificates of appealability by *a circuit judge or a panel* of a court of appeals." *Hohn,* 524 U.S. at 253, 118 S.Ct. 1969 (emphasis added).

## B. *Salgado's interpretation of 28 U.S.C. § 46 is contrary to rules of statutory construction*

■ Salgado's reliance upon 28 U.S.C. § 46(b)—which provides that cases and controversies must be determined by a panel of three judges—is similarly misplaced.[4]

■ 28 U.S.C. § 2253, as interpreted by the Supreme Court in *Burwell,* specifically vests in the courts of appeals the discretion to utilize fewer than three judges in the COA/CPC process. Thus, even if *Hohn's* holding could be construed as defining a COA as a "case or controversy" for purposes of 28 U.S.C. § 46(b), section 46 is a general statute that is trumped by the more specific section 2253[5]: "[I]t is

---

tion for rehearing and suggestion for rehearing en banc. *Hohn,* 524 U.S. at 242, 118 S.Ct. 1969. The dissent criticized this reasoning, asking, "Does this mean that a request for a COA would *not* be a 'case' in those Circuits that treated it differently—that permitted it to be disposed of by a single judge as Rule 22 specifically allows?" *Id.* at 256, 118 S.Ct. 1969 (Scalia, J. dissenting).

However, the *Hohn* majority did not limit its holding to COA denials arising out of particular circuits nor did it make its holding dependent on the number of judges utilized in the process. Instead it noted that a COA denial by a single judge still qualifies as a decision from the full "court." *See Hohn,* 524 U.S. at 241–42, 118 S.Ct. 1969.

3. The *Hohn* Court cited *Burwell* for the proposition that section 2253 confers jurisdiction upon the court as a whole, rather than a single judge acting under his or her individual seal. *See Hohn,* 524 U.S. at 245, 118 S.Ct. 1969. This proposition derives from *Burwell's* holding that a circuit court was not deprived of jurisdiction to rule on a CPC simply because the petitioner failed to make his request to a specific, individual circuit judge as set out in section 2253.

4. 28 U.S.C. § 46(b) provides in pertinent part: "In each circuit the court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges, at least a majority of whom shall be judges of that court . . . ."

5. Garcia notes that section 46(b) uses the term "may," suggesting it is not mandatory. This argument is not persuasive. *See Nguyen v. United States,* 539 U.S. 69, 82, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003) ("[T]he statutory authority for courts of appeals to sit in panels, 28 U.S.C. § 46(b), *requires* the inclusion of at

an elementary tenet of statutory construction that where there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one...." *United States v. Navarro*, 160 F.3d 1254, 1256 (9th Cir.1998) (quotation marks and alterations omitted) (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990)). Indeed, "general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general." *Id.* at 1256–57 (internal quotation marks omitted).

These same principles of statutory construction are reflected in this Circuit's own rules. Specifically, while Federal Rule of Appellate Procedure 27(c) states that"[a] circuit judge may act alone on any motion, but may not dismiss or otherwise determine an appeal or other proceeding," the Advisory Committee Notes to Circuit Rule 27–1 explain: "[S]ome types of motions may be ruled on by a single judge by virtue of a particular rule or statute. For example, a single judge is authorized to grant a certificate of appealability. (*See* 28 U.S.C. § 2253; FRAP 22.)" 9th Cir. R. 27–1 advisory committee note 2.

Finally, *Hohn's* own statutory analysis further undermines Salgado's position. Specifically, one of the arguments put forth by the *Hohn* Court in support of its statutory jurisdiction was the fact that the AEDPA provision regarding successive petitions explicitly forecloses certiorari review: "The requirements for certificates of appealability and motions for second or

successive applications were enacted in the same statute. The clear limit on this Court's jurisdiction to review denials of motions to file second or successive petitions by writ of certiorari contrasts with the absence of an analogous limitation to certiorari review of denials of applications for certificates of appealability." *Hohn*, 524 U.S. at 249–50, 118 S.Ct. 1969.

Moreover, the fact that the AEDPA provision regarding second or successive petitions expressly requires "a three-judge panel of the court of appeals" directly contrasts with the COA provision which provides for a determination by a "circuit justice or judge." *Compare* 28 U.S.C. § 2244(b)(3)(B) *with* 28 U.S.C. § 2253(c)(1). By leaving this particular language in the COA provision intact, Congress evinced an intent to allow circuits to continue the long-standing practice of assigning COA determinations to panels of fewer than three judges.[6]

## C. There is no Circuit Split or Conflict

As noted by the Supreme Court in *Hohn*, virtually all circuits have adopted rules for processing COAs. *See Hohn*, 524 U.S. at 242, 118 S.Ct. 1969. In so doing, some circuits have provided for COA determinations by a single judge, some by two judges, and some by three judges. See, e.g., 11th Cir. R. 22–1(d)(providing for single judge ruling on COA and no petitions for rehearing or rehearing en banc); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir.1997) (noting that a COA request will be processed and presented to "a judge" of the court of appeals); *Thomas v. United States*, 328 F.3d 305, 308–309 (7th Cir.2003) (utilizing two

---

least three judges in the first instance .... (emphasis added)). However, as explained above, section 2253 governs COA determinations and creates an exception to section 46(b).

6. At the time the AEDPA was enacted, *Burwell's* holding had been in effect and practice for forty years.

judges for COA rulings, but allowing for petitions for rehearing to be filed and for potential en banc review); *Bui v. DiPaolo,* 170 F.3d 232, 238 n. 2 (1st Cir.1999) (opting to commit COA determinations to three-judge panels).

Salgado characterizes these divergent approaches as a "split of authority" and urges us to adopt a rule similar to the Third Circuit. However, even the circuits utilizing three judges have recognized their procedure is an exercise of discretion rather than one mandated by statute or rule. *See, e.g., Bui,* 170 F.3d at 238, n. 2 (noting that FRAP 22 authorizes "COA determinations to be made by two, or even one, circuit judges", but that "[t]his circuit has opted, at least for the time being, to commit all such determinations to three-judge panels").

### D. The parties mischaracterize this court's post-denial COA procedures

■ Salgado asserts that petitioners denied a COA are not permitted to file a petition for rehearing en banc in the Ninth Circuit. This is not true. A panel reviewing a motion for reconsideration with an en banc request from a COA denial is authorized to forward the request to the entire court for its consideration. *See* Gen. Ord. § 6.11(motions panel may forward en banc request to entire court or reject request on behalf of court); *see, e.g., Kechechyan v. Adams,* No. 03–56670 (9th Cir. Feb. 11, 2004) (COA order citing section 6.11 with regard to en banc suggestion); *see also W. Pac. R.R. Corp. v. W. Pac. R.R. Co.,* 345 U.S. 247, 267, 73 S.Ct. 656, 97 L.Ed. 986 (1953) (holding that statute pertaining to en banc hearings "is simply a grant of power to order hearings and rehearings *en banc* and to establish the procedure governing the exercise of that power"; litigants have "no *statutory* right to compel each member of the court to give formal consideration" to such requests).

Conversely, Garcia asserts that petitioners denied a COA may utilize the filing of a motion for reconsideration in this court to receive the attention of three judges. However, it is this court's general practice to refer such motions to a two-judge panel for proper disposition. *See* 9th Cir. R. 27–10(b). To do otherwise would allow habeas petitioners to routinely circumvent this circuit's procedure of utilizing two judges on COA panels by simply filing a petition for rehearing. Such an outcome is neither mandated by statute nor federal rule and this court has chosen to not encourage it.

**AFFIRMED.**